IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE IMAGINE GROUP, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN BISCANTI and VOMELA<br>SPECIALTY COMPANY, LLC, d/b/a THE<br>VOMELA COMPANIES,<br><br>    Defendants. | Civil Action No. 25-1137-RGA |

MEMORANDUM ORDER

Before me is Plaintiff's Motion for a Temporary Restraining Order. (D.I. 3). I have considered the parties' briefing. (D.I. 4, 23, 31). I heard oral argument on October 9, 2025. For the reasons set forth below, this motion is DENIED.[1]

Defendant Biscanti worked as Chief Revenue Officer ("CRO") for Plaintiff, Imagine, from March 2023 until his resignation in August 2025; following his resignation, Biscanti began working for Co-Defendant, Vomela, as its CRO. (D.I. 1 at ¶¶ 4, 8, 107). Plaintiff seeks a temporary restraining order enjoining Biscanti from working as CRO for Vomela and from using or disclosing Plaintiff's Confidential Information (D.I. 3-1 at ¶ 2).

To obtain a temporary restraining order,[2] a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

---

[1] Imagine has its principal place of business in Minneapolis. (D.I. 1 at ¶ 11). Vomela has its principal place of business in St. Paul. (D.I. 1 at ¶ 13). The only reason they are in federal court is because Imagine has asserted a violation of the Defend Trade Secrets Act, a federal law.
[2] Although the pending motion is literally seeking a temporary restraining order, it has been briefed as if it were seeking a preliminary injunction, and thus I cite preliminary injunction cases throughout. "A request for a TRO is governed by the same standards that govern the issuance of

1

relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "When one factor is dispositive, a district court need not consider the others." *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 203 (3d Cir. 2024) (citation omitted), *cert. denied sub nom. Gray v. Jennings*, 145 S. Ct. 1049 (2025). A temporary restraining order "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948, pp. 129-30 (2d ed.1995)) (italics in original).

The parties' briefing concentrates on the likelihood of success on the merits. I focus on that factor too.

Plaintiff seeks a temporary restraining order on the grounds that Biscanti's continued employment as CRO at Vomela would be in violation of his non-compete obligations as detailed in various contracts between Biscanti and Plaintiff. (D.I. 4 at 9-10). I decline to grant a temporary restraining order on this ground, because I am not convinced that Plaintiff is likely to succeed on the merits of its breach of contract claim. I find it unlikely that a valid contract containing non-compete provisions between Plaintiff and Biscanti actually exists.

The Employment Term Sheet, signed by Biscanti in March 2023, requires Executive to "enter into the Employee Covenants Agreement [("ECA")], annexed hereto as Appendix A." (D.I. 7-1 Ex. 1 at 5). Appendix A, however, is a mostly blank page, with the only body text reading "[Employee Covenants Agreement]". (D.I. 7-1 Ex. 1 at 8, brackets in original). This

---

a preliminary injunction." *Intercept Pharms., Inc. v. Fiorucci*, 2016 WL 6609201, at *1 (D. Del. Jan. 28, 2016) (quoting *Takeda Pharms. USA, Inc. v. West-Ward Pharm. Corp.*, 2014 WL 5088690, at *1 (D. Del. Oct. 9, 2014)).

presents a problem for Plaintiff, as the Employment Term Sheet itself does not contain a covenant against competition or solicitation; only the ECA does. (D.I. 7-1 Ex. 2 at §§ 4-5). The ECA itself, however, was not signed by Biscanti. (D.I. 7-1 Ex. 2 at 14). Plaintiff argues that the ECA nevertheless "was incorporated by reference into the Acknowledgement [to the Employment Term Sheet] Biscanti signed." (D.I. 31 at 2). This Acknowledgement reads: "[b]y signing below, I accept the terms and conditions of employment… on the terms and conditions set forth in the Company's Offer Letter, the attached Employment Term Sheet, and the attached Employment Covenants Agreement." (D.I. 7-1 Ex. 1 at 3). The ECA was not actually attached, and Biscanti was never provided a copy of this ECA. (D.I. 25 at ¶ 2). Plaintiff has not pointed to any case in which a non-publicly available document could be incorporated by reference into a contract when the offeror failed to provide said document to the offeree. I therefore think it likely that Biscanti was never a party to the ECA and that he is not bound by its non-compete provision.[3]

Plaintiff contends that Biscanti is nevertheless subject to the ECA's non-compete provision, because he signed the Equity Incentive Plan ("EIP"). (D.I. 31 at 3; D.I. 7-1 Ex. 3). The EIP contains a provision stating, "the Participant shall forfeit automatically, without consideration, all vested and unvested Class P Units[] upon the Participant's Termination of Service if such Termination of Service is voluntary by action of the Participant." (D.I. 7-1 Ex. 3

---

[3] Plaintiff argues that "under Delaware law, neither the alleged failure to read or to be provided with a contract renders its terms unenforceable." (D.I. 31 at 1). The primary case cited by Plaintiff in support of this proposition, however, is readily distinguishable from the case before me. (D.I. 31 at 1). In *Pellaton*, the plaintiff "testified that he signed all of the documents at the loan closing without reading them." *Pellaton v. Bank of N.Y.*, 592 A.2d 473, 476 (1991). That is, the plaintiff had the documents but did not read them. In contrast, Plaintiff did not provide Biscanti with the ECA. He did not have it and did not sign it because Plaintiff did not give it to him.

3

at § 4(c)). The EIP contains a Joinder Agreement which subjects Biscanti to Plaintiff's Limited Liability Company Agreement, which itself contains a non-compete provision. (D.I. 7-1 Ex. 3 at Ex. A; D.I. 7-1 Ex. 4 at § 9.3). At oral argument, Plaintiff conceded that Biscanti forfeited the units upon resigning from his employment with Plaintiff. Thus, I find that this case is similar to *Doorly*, where the Court of Chancery held, "When Plaintiff declared that Defendant forfeited the Units,... Plaintiff eliminated the sole consideration for the restrictive covenants.... No consideration means no enforceable contract." *N. Am. Fire Ultimate Holdings, LP v. Doorly*, 2025 WL 736624, at *3 (Del. Ch. Mar. 7, 2025).[4]

Plaintiff attempts to distinguish *Doorly* by arguing that in the case before me, the forfeited equity was not the *sole* consideration for the non-compete provisions contained in the ECA and the Limited Liability Company Agreement, because Biscanti also received employment, monetary compensation, and various other benefits as consideration for signing the EIP. (D.I. 31 at 3). I do not agree. Those forms of consideration are governed by the Employment Term Sheet, which is a separate contract from the EIP. (D.I. 7-1 Ex. 1; D.I. 7-1 Ex. 3). In fact, the EIP contains a clause stating, "This Agreement, the LLC Agreement, the Plan, and the Joinder Agreement are intended by the parties as a final expression of their agreement and intended to be a complete and exclusive statement of the Agreement and understanding of the parties hereto in respect of the subject matter contained herein." (D.I. 7-1 Ex. 3 at § 12(h)). Even

---

[4] At oral argument, Plaintiff's counsel asserted *Doorly* was on appeal to the Delaware Supreme Court. I accept counsel's assertion, although Westlaw does not currently so indicate. Nevertheless, the fact that a decision is on appeal does not lessen its persuasive value. At oral argument, Defendants' counsel cited an even more recent case, *Payscale, Inc. v. Norman*, 2025 WL 1622341 (Del. Ch. June 9, 2025). *Payscale* assumed there was some minimal consideration for the non-compete but nevertheless found it unenforceable due to its overbreadth. *Payscale* appears to support Defendant's overbreadth argument, but I do not need to address that now. I believe counsel for Plaintiff stated that *Payscale* was also on appeal to the Delaware Supreme Court.

though Biscanti's equity may have been "granted in connection with [his] employment" for Plaintiff, that fact alone does not permit Plaintiff to combine the EIP and the Employment Term Sheet into one contract. (D.I. 31 at 3). Since Biscanti forfeited any units received pursuant to the EIP, which was the sole form of consideration that Biscanti received under that contract, I find it likely that the EIP and its joined agreements do not constitute an enforceable contract. Therefore, Biscanti is likely not bound by either of the non-compete provisions, and it is unlikely that Plaintiff will prevail on its breach of contract claim.

I also decline to issue a temporary restraining order on the grounds of trade secrets misappropriation. I do not believe the Plaintiff has carried its burden of persuasion, by a clear showing, that it is likely to succeed on its trade secrets claim. To establish a claim under the Defend Trade Secrets Act ("DTSA"), a plaintiff must show "(1) the existence of a trade secret… (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce… and (3) the misappropriation of that trade secret." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (cleaned up). Under the DTSA, information is a trade secret if "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. §1839(3)(A)-(B).

Plaintiff pleads two categories of trade secrets: "(1) [a] consultant's report and (2) the confidential and proprietary information Biscanti possessed as CRO." (D.I. 31 at 8; *see* D.I. 1 at ¶ 59 (nine categories of "confidential and proprietary information")). At oral argument,

5

Defendants provided me with a copy of the consultant's report,[5] which I reviewed.[6] The consultant's report is a "slide deck" presentation, prepared with the degree of generality that I would expect a slide deck presentation to have. Standing alone, it does not carry the burden of persuasion requisite for the issuance of a temporary restraining order.[7] This report does not, for instance, contain confidential customer lists or any detailed analysis of Plaintiff's proprietary pricing model. Even if the report were a protectable trade secret, there is no evidence that Biscanti misappropriated it, as Plaintiff admits that Biscanti, even if he had one foot out the door, forwarded a copy of this report to his personal email on August 14, 2025, while still employed by Plaintiff as its CRO. (D.I. 4 at 5-6). I think it is clear that Biscanti therefore did not acquire this report through any improper means. Taking these two considerations together, Plaintiff has not carried the burden of persuasion, by a clear showing, that it is likely to succeed on the merits of its trade secrets misappropriation claim.

Plaintiff has not carried the burden of persuasion in showing that Biscanti has actually been using Plaintiff's trade secrets while working at Vomela. First, I note the absence of evidence from Plaintiff that one might expect for an employee who is stealing trade secrets

---

[5] Plaintiff did not file the consultant's report, because it is claimed to be a trade secret. I did not docket Defendant's copy either, for the same reason.

[6] At oral argument, Plaintiff stated that there exist discrepancies between the copy of the report provided to me by Defendants and the copy in its possession. The discrepancies do not appear to be significant. To the extent that Plaintiff believes in good faith, upon further review, that the discrepancies are likely to be material or significant, Plaintiff is invited to submit to me a sealed copy of its version of the report with attached briefing indicating these discrepancies and explaining why they are material.

[7] Plaintiff contends in its reply brief that it "adequately pled" two categories of trade secrets with detail "sufficient at the pleading stage" and cites cases in support thereof. (D.I. 31 at 8). I do not dispute this contention, but it does not avail Plaintiff. Plaintiff may plead trade secret misappropriation in sufficient detail to defeat a motion to dismiss while nevertheless failing to carry the burden of persuasion, by a clear showing, that it is likely to succeed on the merits of the claim that would entitle it to a temporary restraining order.

before leaving a company.[8] Plaintiff does submit a declaration describing trade secret information that Biscanti possessed from having been the CRO, but the DTSA does not support any inevitable disclosure theory of violation. *See Fair Isaac Corp. v. Gurobi Optimization, LLC*, 2025 WL 2636403, at *3-6 (D. Del. Sept. 12, 2025). Second, Defendants submit on-point evidence. A digital forensics specialist investigated Biscanti's personal devices and email account and found no evidence that Biscanti had forwarded, previewed, opened, printed, or transferred either the consultant's report or the email to which it was attached. (D.I. 42 at ¶¶ 10-11, 14, 17, 18).[9] The CEO and President of Vomela has declared that the management of the company "ha[s] never seen any consultant report provided to Imagine or pricing data that was referenced in this lawsuit by Imagine." (D.I. 24 at ¶ 21). The Chief Human Resource Officer of Vomela has declared that he "directed Mr. Biscanti not to bring with him any trade secrets or confidential information of Imagine." (D.I. 26 at ¶ 4). Biscanti himself has declared that he never looked at the consultant's report following his resignation from Imagine and that he did not provide or share either the report itself or the information contained therein with Vomela. (D.I. 25 at ¶¶ 23-24). I "cannot restrain [Defendants] from doing something [they are] not currently doing and do[] not plan to do." *CrowdStrike, Inc. v. NSS Labs. Inc.*, 2017 WL 588713, at *4 (D. Del. Feb. 13, 2017).

Finally, Plaintiff has not carried the burden of persuasion in showing that Imagine is likely to suffer irreparable harm in the absence of a temporary restraining order. To obtain a

---

[8] The primary forensic evidence offered by Plaintiff is a declaration recounting Defendant Biscanti's "internet history" and "file" history. (D.I. 8). The bulk of the described documents appear to relate to Biscanti's efforts to get a new job. If there is anything that suggests an intent to misappropriate any of Plaintiff's trade secrets, the declaration does not point it out.
[9] Plaintiff moves to strike the digital forensics specialist's declaration. (D.I. 47). Briefing on that motion is incomplete. I note that, even if I struck the declaration, Plaintiff would not have established the likelihood that Defendants have in any way used any of Plaintiff's trade secrets.

temporary restraining order, "a showing of irreparable harm is insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a 'clear showing of *immediate irreparable harm.*'" *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (quoting *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989) (italics in original). Plaintiff does not identify any trade secret document in Biscanti's possession other than the consultant's report. Biscanti, in a sworn declaration, has stated that he is "willing to delete the [consultant's report] and related email" if and when "authorized to do so by the Court or agreement of the parties" and that he has "not retained, used, shared, or had access to any other proprietary documents, business information, pricing information or trade secrets of Imagine after [he] resigned." (D.I. 25 at ¶¶ 26-27). Vomela has instructed Biscanti "not to initiate any sales contacts to any clients he worked with at Imagine and has also asked him not to solicit any employees of Imagine" and that "he should not use or bring with him to Vomela any confidential information or property that belongs to Imagine." (D.I. 24 at ¶ 23). Thus, as Defendants have voluntarily agreed to abstain from the conduct at issue, I do not think that Plaintiff would be subject to "immediate irreparable harm" in the absence of a temporary restraining order.

Accordingly, Plaintiff's Motion for a Temporary Restraining Order (D.I. 3) is DENIED.

IT IS SO ORDERED.

Entered this 15th day of October, 2025

_____<br>United States District Judge