IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THE IMAGINE GROUP, LLC,

        Plaintiff,

    v.

JOHN BISCANTI and VOMELA
SPECIALTY COMPANY, LLC, d/b/a THE
VOMELA COMPANIES,

        Defendants.

Civil Action No. 25-1137-RGA

## MEMORANDUM ORDER

Before me is Defendant's Motion to Dismiss. (D.I. 50). I have considered the parties'

briefing. For the reasons set forth below, this motion is GRANTED IN PART and DENIED IN

PART.

Defendant Biscanti worked as Chief Revenue Officer ("CRO") for Plaintiff, Imagine,

from March 2023 until his resignation in August 2025; following his resignation, Biscanti began

working for Co-Defendant, Vomela, as its CRO. (D.I. 1 at ¶¶ 4, 8, 107). While working for

Plaintiff, Biscanti arguably signed various agreements with noncompete provisions. In addition,

shortly before leaving his employment with Plaintiff for employment with Vomela, Biscanti

emailed to himself a consultant's report, which was marked "confidential and proprietary." (D.I.

1 at ¶ 6).

Plaintiff subsequently filed suit against Defendants in this court, alleging (1) violation of

the Defend Trade Secrets Act ("DTSA"), (2) common law misappropriation of trade secrets, (3)

breach of contract against Biscanti for breaching non-compete provisions, (4) breach of contract

against Biscanti for breaching confidentiality provisions, and (5) tortious interference with

1

contract against Vomela. Defendants now move to dismiss Plaintiff's complaint under Rule 12(b)(6). (D.I. 50).

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). When ruling on a motion to dismiss, a court is "not permitted to go beyond the facts alleged in the Complaint and the documents on which the claims made therein [are] based." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424-25 (3d Cir. 1997). A court is permitted to consider "exhibits attached to the complaint" and "document[s] integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d. Cir 2014) (cleaned up).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The Court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1420 (internal citations and quotation marks omitted). This "does

not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court is not "compelled to accept unsupported conclusions and unwarranted inferences." *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 248 (3d Cir. 2022).

To assert a claim under the DTSA, Plaintiff must plead "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret . . . (2) that is related to a product or service used in . . . interstate or foreign commerce . . . and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (cleaned up). At the pleading stage, "the information alleged to be a misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it. But a plaintiff need not spell out the details of the trade secret to avoid dismissal. Rather, the subject matter of the trade secret must be described with sufficient particularity . . . to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* at 906 (internal citations omitted).

Defendants allege that elements 1 and 3 have not been adequately pleaded by Plaintiff.[1] (D.I. 51 at 6). As to element 1, Defendants argue that the consultant's report that Biscanti

---

[1] As to element 1, Defendants do not raise a challenge to Plaintiff's allegations that it took reasonable measures to keep the information secret. Rather, Defendants focus their argument on whether Plaintiff's alleged trade secrets are independently economically valuable.

emailed to his personal email account does not constitute a trade secret. (D.I. 51 at 7). They also argue that Plaintiff's "remaining allegations simply identify in broad categories[] information to which Biscanti was exposed in the ordinary course of his job duties as Imagine's CRO. . . . Such broad categories do not satisfy Plaintiff's pleading burden." (D.I. 51 at 8). As to element 3, Defendants argue that Biscanti did not acquire the consultant's report or any other possible trade secrets by "improper means," as he was still employed by Plaintiff when he acquired the report or other trade secret material. (D.I. 51 at 10). Defendants also argue that Plaintiff relies upon an impermissible "inevitable disclosure" theory in pleading misappropriation (D.I. 51 at 11).

I disagree with Defendants as to element 1. On a motion to dismiss, I am required to take the well-pleaded allegations in the complaint as true and view them in the light most favorable to the complainant. *Twombly*, 550 U.S. at 558. Plaintiff pleads that the consultant's report (and accompanying presentation) included several categories of confidential information, such as "Imagine's clients [and] details about Imagine's recurring partnerships with large enterprise clients" as well as "Imagine's printing and creative capabilities, including plans for expansion and spending." (D.I. 1 at ¶ 52). These allegations are adequate to plead that the consultant's report constitutes a trade secret.[2] Similarly, I find that Plaintiff adequately pleads that Biscanti may be privy to other trade secrets. For instance, Plaintiff adequately pleads that Biscanti possesses "intimate knowledge about which clients and companies are more likely to produce

---

[2] Defendants cite my order denying Plaintiff's request for a TRO, where I stated, "The consultant's report is a 'slide deck' presentation, prepared with the degree of generality that I would expect a slide deck presentation to have." (D.I. 51 at 7; D.I. 54 at 1-2). This observation is not helpful to Defendants' argument. In my TRO order, I made that remark while opining on Plaintiff's likelihood of success. Indeed, I noted in the sentence immediately following, "Standing alone, [the consultant's report] does not carry the burden of persuasion requisite for the issuance of a temporary restraining order." (D.I. 49 at 6). In contrast, I am required in ruling on a motion to dismiss to view Plaintiff's well-pleaded allegations in the light most favorable to Plaintiff.

reasonable margins" which constitutes "a significant advantage to any competitor who did not first have to go through the analysis required to create a pricing strategy that [would] ultimately le[a]d to revenue success." (D.I. 1 at ¶ 30). Likewise, Plaintiff adequately pleads that Biscanti "was involved in the entire process of Imagine's proprietary printing product and is intimately familiar with Imagine's ultimate formula for this product. Biscanti sat in meetings with raw material suppliers, participated in discussions about which materials worked best, was privy to the price of those materials, and [was] ultimately aware of agreements entered into with Imagine's suppliers to secure the materials for Imagine's proprietary printing product." (D.I. 1 at ¶ 37).

I also disagree with Defendants as to element 3. Plaintiff adequately pleads that Biscanti misappropriated, at a minimum, the consultant's report. The DTSA defines "improper means" as encompassing "breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6)(A). Plaintiff pleads that Biscanti was "bound by the Information Security Handbook," which states that "[a]ll Imagine business communications sent by electronic mail must be sent and received using the company email address. A personal email account or any other email address must not be used for Imagine business unless a worker obtains management approval." (D.I. 1 at ¶ 66). At least one court in the Third Circuit has found, "Improper acquisition occurs when a defendant agreed to abide by a confidentiality agreement but impermissibly sends the trade secrets to her personal email account in violation of plaintiff's policies and confidentiality agreement." *Legend Biotech USA Inc. v. Liu*, 2024 WL 919082 at *6 (D.N.J. Mar. 4, 2024) (cleaned up); *see also AUA Private Equity Partners, LLC v. Soto*, 2018 WL 1684339 at *7 (S.D.N.Y. April 5, 2018) ("Because [Defendant] is alleged to have uploaded [Plaintiff's] trade secrets from her work laptop to her personal cloud-based storage without [Plaintiff's] permission and in direct violation

of the confidentiality agreements she signed, the complaint plausibly alleges that she acquired

the trade secrets by improper means . . . in breach of her duty to maintain secrecy."). Therefore, I

find that Plaintiff has pleaded an adequate claim for Biscanti's violation of the DTSA with

respect to the consultant's report.

I decline to find that Imagine has adequately pleaded allegations supporting the

"inevitable disclosure" theory as to the other types or categories of trade secrets Biscanti

supposedly misappropriated. The language of the DTSA does not support plaintiffs' ability to

state a claim under an "inevitable disclosure" theory, *see Fair Isaac Corp. v. Gurobi*

*Optimization, LLC*, 2025 WL 2636403 at \*5-6 (D. Del. Sept 12, 2025), and the two cases

Plaintiff cites here in support of its position, *Fres-co Sys. v. Hawkins*, 690 F. App'x 72 (3d Cir.

2017) and *Bimbo Bakeries USA, Inc. v. Botticella,* 613 F.3d 102 (3d Cir. 2010), do not convince

me otherwise.[3] In *Fres-co*, "the Third Circuit did not differentiate between the requirements of

the Pennsylvania Uniform Trade Secret Act ("PUTSA") and the DTSA. It simply acknowledged

that both statutes allowed injunctions based on 'threatened misappropriation.'" *Fair Isaac Corp.*,

2025 WL 2636403 at \*4 (citing *Fres-co*, 690 F. App'x at 76). Since "Pennsylvania trade secret

law allows a person to be enjoined from 'engaging in employment . . . where that employment is

likely to result in the disclosure of information,'" the court in *Fres-co* thus "did not hold that the

inevitable disclosure doctrine applies under the DTSA" as opposed to the PUTSA. *Fair Isaac*

*Corp.*, 2025 WL 2636403 at \*4 (quoting *Air Prods. & Chems., Inc. v. Johnson*, 442 A.2d 1114,

1120 (Pa. Super. Ct. 1982)). *Bimbo Bakeries*, the other case cited by Plaintiff, is similarly

---

[3] Plaintiff argues "While the DTSA prohibits *injunctive* relief based *solely* on 'the information
the person knows,' Defendants misread and improperly expand this limitation on injunctive
relief as a blanket bar [by the DTSA] on [an] inevitable disclosure claim." (D.I. 53 at 12) (italics
in original). Plaintiff, however, fails to cite any case where a court has opined that the DTSA
permits an "inevitable disclosure" claim to go forward in any other context.

unpersuasive, as it was decided wholly under the PUTSA and therefore says nothing about whether the "inevitable disclosure" doctrine applies under the DTSA. *Bimbo Bakeries*, 613 F.3d at 109.[4] Thus, the only trade secret misappropriation validly pleaded in the complaint is that of the consultant's report.

Defendants argue I should dismiss Plaintiff's common law misappropriation claim. (D.I. 51 at 11). They note that the Delaware Uniform Trade Secrets Act ("DUTSA") preempts common law claims for misappropriation. *See* 6 Del. C. § 2007(a) ("[T]his chapter displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret."). The Delaware Court of Chancery has held that the DUTSA preempts claims for common law misappropriation. *Alarm.com Hldg's, Inc. v. ABS Capital Partners Inc.*, 2018 WL 3006118 at *9 (Del. Ch. June 15, 2018), *aff'd*, 204 A.3d 113 (Del. 2019). The plain text of the statute supports such a reading. I agree with Defendants that Plaintiff's common law misappropriation claim is preempted by the DUTSA. That said, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P 15(a)(2). I will dismiss Plaintiff's common law misappropriation claim but will grant Plaintiff leave to amend its complaint to plead a claim under the DUTSA.

Plaintiff asserts two breach of contract claims against Biscanti. Plaintiff alleges that Biscanti breached non-compete provisions and confidentiality provisions of (1) the Limited Liability Company Agreement ("LLC Agreement") and (2) the Employee Covenant Agreement ("ECA").

---

[4] This is not surprising. The DTSA was not signed into law until 2016, six years after the *Bimbo Bakeries* decision.

Plaintiff has not successfully pleaded a breach of contract claim against Biscanti. Biscanti was not a party to the ECA's terms, and the LLC Agreement is not a valid contract for lack of consideration.

Although on a motion to dismiss I am required to accept Plaintiff's well pleaded complaints as true, I am permitted to consider "exhibits attached to the complaint" and "document[s] integral to or explicitly relied upon in the complaint." *Schmidt*, 770 F.3d at 249 (cleaned up); *see also Opera Solutions, LLC v. Schwan's Home Service, Inc.*, 2016 WL 3606776 at *3 (D. Del. July 1, 2016) ("In evaluating a Rule 12(b)(6) motion to dismiss a [breach of] contract claim, the Court may look at the contract on which the claims are based without converting the motion to one for summary judgment."). Plaintiff explicitly relies upon the Employment Term Sheet, the ECA, the Imagine Equity Incentive Plan ("EIP"), and the LLC Agreement throughout its complaint and docketed both documents on the same day it filed its complaint. (D.I. 7-1 Exs. 1-4). I may therefore consider these documents in ruling on Defendants' motion to dismiss.

Plaintiff docketed a packet of documents that Biscanti signed upon accepting his offer to work at Plaintiff, comprising the Employment Term Sheet and various appendices. (D.I. 7-1 Ex. 1). The ECA was supposed to be included in this packet, but instead, where the ECA should have been, there is a page with only three lines of text: "Appendix A", "(to Employment Term Sheet)", and "[Employee Covenants Agreement]." (D.I. 7-1 at Appendix A) (brackets and underlining in original). The copy of the ECA that Plaintiff submits as a separate exhibit and argues Biscanti is party to lacks Biscanti's signature, despite being marked as the "Execution Copy" and despite including a signature page where Biscanti and a representative for Imagine should have signed. (D.I. 7-1 Ex. 2 at 14).

8

Plaintiff argues that whether the ECA is an enforceable contract is a question of fact that cannot be decided on a motion to dismiss. (D.I. 53 at 15). I disagree. "Under Delaware law, interpreting a contract is a question of law that I can resolve on a motion to dismiss." *W.R. Berkley Corp. v. Dunai*, 2021 WL 1751347, at *2 (D. Del. May 4, 2021) (citing *MicroStrategy Inc. v. Acacia Rsch. Corp.*, 2010 WL 5550455, at *5 (Del. Ch. Dec. 30, 2020)).[5] I am thus permitted to interpret the terms of the Employment Term Sheet and determine whether these terms have successfully incorporated the ECA by reference.

I do not think that the Employment Term Sheet has successfully incorporated the ECA by reference. The Employee Term Sheet states, "Executive will be required to enter into the Employee Covenants Agreement, annexed hereto as Appendix A." (D.I. 7-1 Ex. A at § 12). Indeed, a (mostly blank) document entitled "Appendix A" was annexed to the Employee Term Sheet. (D.I. 7-1 Ex. A at Appendix A). Yet Plaintiff's argument appears to be that an entirely different fifteen-page document should be construed as what was actually incorporated by reference to the Employee Term Sheet. (D.I. 7-2 Ex. 2). "In order to uphold the validity of terms incorporated by reference it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *Town of Cheswold v. Central Del. Business Park*, 188 A.3d 810, 819 n. 39 (Del. 2018) (quoting 11 Williston on Contracts § 30:24 (4th ed. 2017)). Even after considering Plaintiff's pleadings in the light most favorable to it in conjunction with the documents submitted by Plaintiff with the complaint, it is clear that Biscanti was not a signatory to the version of Appendix A (i.e., the ECA) that Plaintiff claims he should be a signatory to.[6]

---

[5] The contract states, "The terms of Executive's employment will be governed by the laws of the state of Delaware." (D.I. 1 Ex. 1 at § 15).

[6] That is, Defendant is undoubtedly a party to the version of the ECA annexed to the Employment Term Sheet as Appendix A. As this version of the ECA is an essentially empty page, however, it is of no use to the Plaintiff as to its breach of contract claim.

Moreover, Plaintiff does not plead any other facts indicating that Biscanti "had knowledge of and assented to" the ECA's various incorporated terms, such as its covenant against competition. *Id.* Plaintiff has therefore not adequately pleaded that the ECA was incorporated by reference to the Employment Term Sheet Biscanti signed.[7]

Plaintiff also argues, "Parties can be bound to agreements they did not sign through their subsequent conduct." (D.I. 53 at 15). It appears Plaintiff wishes to assert that Imagine and Biscanti may have entered into a contract implied-in-fact as to the ECA. A contract "implied-in-fact is 'founded upon a meeting of minds, which although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding.'" *Chase Manhattan Bank v. Iridium Africa Corp.*, 239 F. Supp. 2d 402, 408 (D. Del. 2002) (quoting *Hercules Inc. v. United* States, 516 U.S. 417, 424 (1996)). Under Delaware law however, "There must be a meeting of the minds. To be a legally binding implied-in-fact contract, the parties' mutual assent to the contract terms must be

---

[7] Plaintiff notes that I stated in my TRO decision, "Plaintiff has not pointed to any case in which a non-publicly available document could be incorporated by reference. . ." (D.I. 53 at 15). This assertion takes my words out of context, however, as the remainder of that sentence reads ". . . into a contract when the offeror failed to provide said document to the offeree." (D.I. 49 at 3). Both cases Plaintiff cites for the proposition that a non-publicly available document could be incorporated by reference are unavailing to Plaintiff, because there was no indication that defendants in those cases were not provided with or otherwise lacked access to copies of the non-publicly available documents that were alleged to have been incorporated by reference. In *Star States Dev. Co. v. CLK, Inc.*, 1994 WL 233954, at *4 (Del. Super. May 10, 1994), the plaintiff "contend[ed] that [Defendant] presumably reviewed all the relevant documents" and the defendant does not appear to have disputed this claim. Similarly, in *Pharm. Corp. of Am. v. Askari*, 2018 WL 2108200, at *6-7 (D. Del. May 7, 2018)*, report and recommendation adopted*, 2018 WL 3768988 (D. Del. Aug. 8, 2018) there was no claim by the defendants that the documents incorporated by reference were somehow withheld or otherwise unavailable to them. In contrast, Plaintiff here does not plead that Biscanti reviewed or was presented with a copy of the ECA, nor does the copy of the Employment Term Sheet that Plaintiff submits with the Complaint support a reasonable inference that Biscanti reviewed or was presented with a copy of the ECA.

objectively manifest or shown. Mutual assent is neither a subjective nor personal understanding."

*Chase Manhattan Bank*, 239 F. Supp. 2d at 408-09 (citing *Creditors' Comm. of Essex Builders,*

*Inc. v. Farmers Bank*, 251 A.2d 546 (Del. 1969)). The complaint does not assert facts giving rise

to a reasonable inference that there was a meeting of the minds between Biscanti and Imagine as

to the terms of the ECA. Thus, since Plaintiff has not pleaded adequate facts giving rise to a

reasonable inference of an enforceable contract between Imagine and Biscanti as to the ECA, I

dismiss Plaintiff's breach of contract claims insofar as they are predicated on the ECA. To the

extent Plaintiff is able to plead facts demonstrating that Biscanti was aware or became aware of

the terms of the ECA or some other set of facts giving rise to a reasonable inference of a

"meeting of the minds" between Biscanti and Imagine as to the ECA, I will permit Plaintiff to

amend its pleadings accordingly.

Plaintiff's other breach of contract claims against Biscanti are predicated upon his alleged

breach of the LLC Agreement. Biscanti became party to the LLC Agreement when he signed the

Joinder Agreement to the EIP, the relevant text of which reads, "The undersigned, as a condition

precedent to becoming the owner or holder of record of [Units] (sic) Class P Units of Imagine!

Management, LLC, . . . hereby agrees to become a Member under, party to and bound by that

certain Limited Liability Company Agreement . . ." (D.I. 7-1 Ex. 3 at Ex. A). The EIP

Agreement contains a provision that states, "[U]pon the Participant's Termination of Service for

any reason, the Participant shall forfeit automatically, without consideration, all unvested Class P

Units." (D.I. 7-1 Ex. 3 at § 4(a)).

Defendants argue that the LLC Agreement's restrictive covenants that Biscanti is accused

of breaching fail for lack of consideration. (D.I. 51 at 13). Plaintiff responds that "the sufficiency

of consideration is a factual issue not appropriately decided on a motion to dismiss." (D.I. 53 at

11

16). Plaintiff cites *Simon Property Group, L.P. v. Brighton Collectibles LLC*, 2021 WL 60568522 at *5 (Del. Super. Dec. 21, 2021) in support of this proposition. The court there, however, stated, "There are also questions of fact concerning the adequacy of consideration. Adequacy of consideration *may* involve factual issues." *Id.* (emphasis added). There was no indication that *Simon Property* stands for the blanket proposition that sufficiency of consideration is *always* a factual issue not appropriately decided on a motion to dismiss. Indeed, under Delaware Law, a court is permitted to determine, on a motion to dismiss, whether a contract is unenforceable as a matter of law for want of consideration. *N. Am. Fire Ultimate Hldgs., LP v. Doorly*, 2025 WL 736624 at *2-3 (Del. Ch. Mar. 7, 2025). Further, we are not in state court. Whether a pleading meets the Rule 12(b)(6) standard is decided under federal, not state, law. "It is settled that if [a Federal] Rule in point is consonant with the Rules Enabling Act . . . and the Constitution, the Federal Rule applies regardless of contrary state law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 n. 7 (1996).

Defendants state that the LLC agreement cannot be enforced because the only consideration Biscanti received were equity units that were forfeited, "without consideration," upon his leaving Imagine. (D.I. 51 at 14). Plaintiff argues that Biscanti received other forms of consideration as a party to the EIP. (D.I. 53 at 16). I have reviewed the EIP and I disagree with Plaintiff's contention. There is no indication within the EIP that Biscanti received, for example, employment as an executive with a substantial six-figure base salary. These benefits flowed to Biscanti from a separate contract, i.e., the Employment Term Sheet. (D.I. 7-1 Ex. 1 at Ex. A, §§ 4, 6). The only consideration received by Biscanti for binding himself to the terms of the LLC agreement within the EIC is that of a grant of Class P Units, which were automatically forfeited upon his termination of service. ((D.I. 7-1 Ex. 3 at § 4(a)).

*Doorly* is thus directly on point. There, the Court of Chancery found that various equity "Units were the sole consideration for the restrictive covenants. When Plaintiff declared that Defendant forfeited the Units, therefore, Plaintiff eliminated the sole consideration for the restrictive covenants. . . . No consideration means no enforceable contract." *Doorly*, 2025 WL 736624 at *3. *See also Payscale Inc. v. Norman*, 2025 WL 1622341 at *5 (Del. Ch. June 9, 2025) (declining to uphold various restrictive covenants when the "consideration exchanged" was "vanishingly small."). Because the LLC Agreement lacks valid consideration as a matter of Delaware Law, no amendment of the pleadings could cure this defect.

Finally, Plaintiff asserts a claim for tortious interference with contract against Vomela. Plaintiff's identification of the contract or contracts that Vomela is supposed to have interfered with is somewhat unclear, as none are specifically named in Count V. Assuming that the allegation is that the interference was the cause of the two alleged breaches of contract set forth in Counts III and IV, Count V fails for the same reasons that Counts III and IV fail. As such, this claim will also be dismissed.

Defendant's Motion to Dismiss Count I of the Complaint is DENIED. Defendant's Motion to Dismiss Counts II-V of the Complaint is GRANTED without prejudice. Plaintiff is GRANTED LEAVE TO AMEND its complaint within fourteen (14) days of entry of this order to cure the defects in Counts II-V of its complaint.

IT IS SO ORDERED.

Entered this 24 day of November, 2025

_____
United States District Judge